**NOT FOR PUBLICATION**

**FILED**

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

FEB 18 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

XUFENG ZHU,

        Petitioner,

  v.

PAMELA BONDI, Attorney General,

        Respondent.

No.   21-70239

Agency No. A208-728-314

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted February 13, 2026[**]
Honolulu, Hawaii

Before: BYBEE, R. NELSON, and FORREST, Circuit Judges.

Petitioner Xufeng Zhu, a native and citizen of China, seeks review of a decision of the Board of Immigration Appeals (BIA) affirming the Immigration Judge (IJ)'s denial of his applications for asylum, withholding of removal, and relief under the Convention Against Torture (CAT). We have jurisdiction under

---

    [*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

    [**]    The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

8 U.S.C. § 1252, and we deny the petition.

Where, as here, "the BIA cites [*Matter of*] *Burbano* but adds its own analysis, we review factual findings by both the BIA and the IJ for substantial evidence." *Bondarenko v. Holder*, 733 F.3d 899, 906 (9th Cir. 2013) (discussing *Matter of Burbano,* 20 I. & N. Dec. 872 (B.I.A. 1994)). We may reverse the agency's factual findings only if "any reasonable adjudicator would be compelled to conclude to the contrary based on the evidence in the record." *Bringas-Rodriguez v. Sessions*, 850 F.3d 1051, 1059 (9th Cir. 2017) (en banc) (citations omitted). We review the agency's legal determinations *de novo*. *Route v. Garland*, 996 F.3d 968, 975 (9th Cir. 2021).

1. ***Asylum.*** To qualify for asylum, an applicant must establish that "a central reason" for the persecution alleged is one of several protected grounds: "race, religion, nationality, membership in a particular social group, [and] political opinion." 8 U.S.C. § 1158(b)(1)(B)(i); *see Umana-Escobar v. Garland*, 69 F.4th 544, 551 (9th Cir. 2023). Zhu contends that Chinese authorities demolished his family's home and that he was beaten and arrested after he contested the inadequate compensation the government provided for it. He asserts that he is entitled to relief from removal because he has suffered—and will suffer—harm in China based on his political opinion. Specifically, he contends that Chinese authorities have imputed to him "an anti-government, anti-eminent domain political opinion." *See Parada v.*

2

*Sessions*, 902 F.3d 901, 910–11 (9th Cir. 2018) (recognizing "imputed political opinion" as a basis for establishing a nexus between persecution and a protected ground). Zhu, however, did not produce any direct evidence from which the agency was compelled to conclude that such a political opinion was imputed to him. Though he was referred to by at least one government official as a "troubled citizen" who "did not comply with the government's rules and the regulations," this statement does not necessarily reflect a belief that Zhu's noncompliance was ideologically motivated. The same is true of Zhu's arrest for "doing illegal petition."

Zhu's indirect evidence is also inadequate. His mistreatment by government officials in response to his compensation-seeking efforts, while unfortunate, could have happened for reasons unrelated to imputed political opinions. Likewise, the political nature of Zhu actions does not necessarily mean that his persecutors understood his actions to reflect his political opinions rather than his personal interests. *See Song v. Sessions*, 882 F.3d 837, 842–43 (9th Cir. 2017) (suggesting that a court may consider whether the alleged persecutor would perceive the applicant to be acting for the benefit of others in assessing whether a political opinion had been imputed to the applicant). Thus, we conclude that the agency's conclusion that Zhu failed to establish the requisite nexus for his asylum claim was supported by substantial evidence.

**2. *Withholding of Removal*.** Our conclusion with respect to withholding of

3

removal is the same as with respect to asylum. Withholding of removal is appropriate where "a petitioner . . . demonstrate[s] that his 'life . . . would be threatened in that country because of [the petitioner's] race, religion, nationality, membership in a particular social group, or political opinion.'" *Barbosa v. Barr*, 926 F.3d 1053, 1059 (9th Cir. 2019) (as amended) (quoting 8 U.S.C. § 1231(b)(3)(A)). Where, as here, the agency properly found that there was *no* nexus whatsoever to a protected ground, any distinctions between asylum and withholding of removal fall away. *See Barajas-Romero v. Lynch*, 846 F.3d 351, 360 (9th Cir. 2017) (explaining that both asylum and withholding claims are appropriately denied when there is "no nexus at all"). Accordingly, we also conclude that the denial of Zhu's request for withholding of removal was supported by substantial evidence.

**3. *Convention Against Torture*.** To have removal deferred under CAT, "an applicant must establish that it is more likely than not that he or she would be tortured if removed." *Hernandez v. Garland*, 52 F.4th 757, 768–69 (9th Cir. 2022) (citation omitted). "To constitute torture, an act must inflict severe pain or suffering, and it must be undertaken at the instigation of, or with the consent or acquiescence of, a public official." *Id.* at 769 (citation omitted). Relevant evidence for this inquiry includes—but is not limited to—"past torture inflicted upon the applicant," the possibility "that the applicant could relocate to a part of the country of removal where he or she is not likely to be tortured," and any indications of "gross, flagrant

4

or mass violations of human rights within the country of removal." 8 CFR § 1208.16(c)(3). The threshold for torture is high, and "even instances of significant physical abuse [may] not constitute torture." *Hernandez*, 52 F.4th at 769.

In support of his position that he is likely to be tortured on return to China, Zhu points to his prior beating by government actors. But this event did not constitute "torture," as it did not rise to the level of "extreme cruel and inhuman treatment . . . result[ing] in severe pain or suffering." *Tzompantzi-Salazar v. Garland*, 32 F.4th 696, 706 (9th Cir. 2022). Our conclusion is supported by numerous decisions denying CAT relief in cases involving more severe abuse. *E.g.*, *id.* at 700, 706; *Vitug v. Holder*, 723 F.3d 1056, 1060, 1065–66 (9th Cir. 2013); *Ahmed v. Keisler*, 504 F.3d 1183, 1188–89, 1201 (9th Cir. 2007); *Kumar v. Gonzales*, 444 F.3d 1043, 1055–56 (9th Cir. 2006). Thus, we conclude that the agency's denial of Zhu's request for deferred removal under CAT was also supported by substantial evidence.

**PETITION DENIED.**